IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00317-PAB-MJW

BOXER F2, L.P., a Texas limited partnership,

Plaintiff,

v.

FLAMINGO WEST, LTD., d/b/a LEGALWIZ PUBLICATIONS,
BRONCHICK & ASSOCIATES,
WILLIAM BRONCHICK, and
BRONCHICK & ASSOCIATES, P.C.,

Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO RENEW MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 37(b)(2)
(Docket No. 89)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

In July 2014, Plaintiff moved to compel discovery.  (Docket No. 40.)  Finding that

Plaintiff was entitled to the requested discovery, the Court granted the motion on August

28, 2014.  (Docket No. 59.)  In December 2014, Plaintiff moved for sanctions, believing

Defendants' compliance with the Court's August 28th discovery order to be inadequate.

(Docket No. 67.)  The Court agreed, and on February 11, 2015, entered an order:

> (1) finding that Defendants had "conducted themselves in bad faith and ha[d]
>     intentionally failed to honor their discovery obligations under the Federal
>     Rules of Civil Procedure";
>
> (2) characterizing Defendants' conduct as "flagrant "and their arguments as
>     "frivolous," "patently invalid," "cheap[ly] semantic," "flatly contrary" to the law,
>     and "without any valid justification";

2

(3) determining that an appropriate sanction would be imposition of adverse inferences establishing the well-pleaded factual allegations in the complaint aimed at establishing transferee liability under various legal theories; but

(4) granting Defendants one last chance to produce the ordered discovery before imposition of adverse inferences.

(Docket No. 86, *available at Boxer F2, L.P. v. Flamingo W., Ltd.*, 2015 WL 586692 (D. Colo. Feb. 11, 2015).)  In an effort to reduce further gamesmanship over the precise wording or scope of Plaintiff's discovery requests, the Court ordered Defendants simply to produce "[a] complete copy of each named Defendants' accounting records, in native electronic format as stored by Defendants' accounting software (which records shall be deemed to satisfy [specified discovery requests]." (Docket No. 86, p.14; 2015 WL 586692, at *7.)  The Court also granted Plaintiff explicit leave to renew its motion for sanctions should Defendants fail to comply with the Court's order.  (Docket No. 86, p.14; 2015 WL 586692, at *8.)

Plaintiff renewed its request for sanctions.  (Docket No. 89.)  The Court has reviewed the parties' filings (Docket Nos. 89, 92, 93, 94, 99, 100, 102, & 103); held a motion hearing on April 29, 2015, and considered the testimony of witnesses, the exhibits received into evidence, and arguments by counsel (Docket No. 117, 118, & 123); taken judicial notice of the court's entire file in this case; and reviewed the relevant Federal Rules of Civil Procedure, statutes, and case law.  Now being fully informed, the Court makes the following findings of fact, conclusions of law, and order.

## **Findings of Fact**

The Court finds:

3

(1)     On February 25, 2015, Defendants provided Plaintiff the accounting

        records for Bronchick & Associates, P.C., and Flamingo West, Ltd.

        (*d/b/a* Legalwiz Publications, Inc.) in native QuickBooks Enterprise

        format, via Dropbox hyperlink;

(2)     Defendants did not provide Plaintiff a functioning username and

        password with which to access the records, until March 24, 2015;

(3)     On March 24, 2015, the username and password provided to Plaintiff

        allowed access to a limited amount of information, and as of March 24,

        2015, Defendants were not in compliance with this Court's orders

        compelling discovery;

(4)     On April 10, 2015, in an attempt to resolve the impasse, the Court

        ordered that:

            Defendants shall make their accounting records available for
            inspection by Plaintiff at Defendants' premises, on
            Defendants' own computers, for a period of no more than
            four hours, on or before April 24, 2015.  Counsel for both
            parties, Craig Spillman [Plaintiff's information-technology
            expert], and Cynthia Francis [Defendants' accountant] shall
            be present.  Plaintiff shall be given the opportunity to print,
            download, or otherwise produce reports from Defendants'
            accounting software, and Defendants shall make available
            such passwords or admin permissions as are necessary.
            Plaintiff shall have no right to access non-relevant
            confidential information (such as employee social security
            numbers, customer credits cards, and the like).  (Docket No.
            106.)

(5)     At some point between March 24, 2015, and April 23, 2015,

        Defendants changed the access permissions granted to Plaintiff's

        username and password.

(6)     On April 23, 2015, Plaintiff's counsel and Plaintiff's expert were allowed access to Defendants' records for a period of over three hours. Plaintiff was provided with access to records for Bronchick & Associates, P.C., sufficient to discharge that specific Defendant's discovery obligations.  Plaintiff was <u>not</u> provided with access to records for Flamingo West Ltd. sufficient to discharge that specific Defendant's discovery obligations.

(7)     On April 23, 2015, Defendants obstructed Plaintiff's ability to inspect and copy Flamingo West Ltd.'s accounting records.  Defendants did not allow Plaintiff access to all of Flamingo West Ltd.'s records.  Of the Flamingo West Ltd. records that Defendants did allow access to, Defendants altered the records to conceal material information without valid justification.

(8)     Defendants have not produced any accounting records other than select income-tax returns for Defendant William Bronchick, personally.

(9)     Defendants have acted in bad faith, have failed to comply with three Court orders compelling discovery, and have done so knowingly and intentionally.

## <u>Discussion</u>

The Court set forth the legal standards, and weighed the applicable factors, in its February 11, 2015, Order.  (Docket No. 86, *available at Boxer F2, L.P. v. Flamingo W., Ltd.*, 2015 WL 586692 (D. Colo. Feb. 11, 2015).)  There, the Court concluded—applying the analysis from *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–22 (10th Cir. 1992)—that

the appropriate sanction was imposition of adverse inferences sufficient to establish Plaintiff's theories of transferee liability.  The Court provided Defendants with an opportunity to provide unfettered access to their accounting records to avoid this sanction, but Defendants failed to comply in good faith with the Court's orders.  As a result, the Court will now impose the adverse-inference sanction.

Defendants make several arguments in objection to Plaintiff's renewed request for sanctions, but none of them suffice.

First, Defendants argue that Plaintiff does not have clean hands, and has been playing a game of "gotcha."  Specifically, Defendants point out:

- Plaintiff requested—from February 11, 2015, until February 25, 2015—that Defendants provide the accounting records in non-native format because Plaintiff did not wish to purchase QuickBooks Enterprise; switched to demanding "strict compliance" on February 25, 2015; then filed its renewed motion for sanctions on the theory that Defendants' production of native files instead of non-native format was in bad faith;

- Plaintiff did not confer with Defendants prior to filing its renewed motion for sanctions, and filed its renewed motion before attempting to access the records through QuickBooks Enterprise;

- Plaintiff did not confer with Defendants or express dissatisfaction with the March 24, 2015, password and username before filing its reply brief (taking issue with the access afforded that password and username) in support of the renewed motion; and

- Plaintiff did not confer with Defendants or express dissatisfaction with the April 23, 2015, inspection of accounting records prior to the motions hearing on April 29, 2015.

The Court agrees that Plaintiff should have purchased QuickBooks Enterprise and attempted to open the files prior to filing its renewed motion for sanctions. But since Defendants had not given Plaintiff's username and password any meaningful access to the accounting records, it would not have done Plaintiff any good to have done so. Any error on Plaintiff's part is thus harmless error. As for failures to confer, the Court simply does not believe that Defendants were unaware that their conduct failed to live up to this Court's orders—and since this discovery dispute has been ongoing since July 2014, the Court believes any further attempts to confer would have been futile. Plaintiff is not required to keep beating its head against this particular wall.

Defendants further argue that, to the extent Flamingo West Ltd.'s records were modified, the modifications were (1) justifiable, and (2) harmless. The Court disagrees. Plaintiff offered evidence showing that seven QuickBooks reports for Flamingo West Ltd. were modified by Defendants prior to production. (Docket No. 123, Exhibits 11-1 to 11-5.) Two of those reports are in evidence. (*Id.*, Exhibits 14-2 & 15-2.) On Flamingo West Ltd.'s Profit & Loss Detail and its Balance Sheet detail, the "name" field and "memo" field were removed from each transaction—so that Plaintiff can see the dates, amounts, and category of each transaction, but not the payor/payee or brief accounting notes. (*Id.*, Exhibits 14-2 & 15-2.) Defendants argue that such information is rightfully redacted to protect the privacy interests of customers, but this argument is belied by two things. First, Defendants did *not* redact the information from Bronchick & Associates

P.C.'s records—and there is no logical reason why client information for Defendants'
*law firm* would be less confidential in nature than that for Defendants' *real-estate
ventures*. The more obvious explanation for the distinction is that Flamingo West Ltd. is
the direct debtor in this proceeding, and Defendants wish to frustrate Plaintiff's ability to
prove that Flamingo West Ltd. made transfers to defeat its creditors. Second, there is a
protective order in place in this case to preserve the confidentiality of discovery material.
There is no need for heightened or unusual protections, as no trade secrets are at issue
and the parties are not in business competition with each other; further, Defendants
have not explained any harm that might arise from Plaintiff's surreptitious access to their
customers' mere names. The Court finds that the modifications were not justifiable.

Defendants also argue that the modifications were harmless, because Plaintiff
received the same information in other reports—specifically, a "transaction detail"—that
Plaintiff was given access to. (*See Id.*, Exhibit 9.) This also fails for two reasons. First,
the transaction detail is not in evidence, and the only evidence on it in the record shows
that it, too, was modified before being provided to Plaintiff. (*Id.*, Exhibit 11-5.) Second,
the transaction detail on its own is a mere data dump. Plaintiff is not required to wade
laboriously through unorganized information—especially here, where the Court's April
10th Order required Defendants to make *all of the reports* on its accounting software
available to Plaintiff.

Next, Defendants argue that all transfers to Bronchick personally from Flamingo
West Ltd. should be fairly reflected as distributions, compensation, or dividends, in the
produced records—and to the extent no such records are reflected, it is because no
such transfers occurred. But this is not a point on which Plaintiff is required to take

8

Defendants' word.  Plaintiffs are entitled to review Defendants' records—and the Court has three times ordered Defendants to produce the records in one way or another. Further, Plaintiff persuasively established that the records have large and material gaps. In an alter ego or fraudulent transfer case—it should go without saying—a creditor is interested in more than just the faithfully recorded transfers of shareholder distributions and officer compensation.  It is the disguised transfers, abusive transactions, and hidden gambits that the creditor needs either to find or to rule out.  For example, there is at least one transaction already glaringly unexplained: a sale (for an unknown amount of money) of residential assets from Flamingo West Ltd. to Defendant William Bronchick's wife.  Such a sale might be entirely on the up-and-up; it might also be an attempt to squirrel assets away from creditors.  But in no event would be it recorded on Flamingo West Ltd.'s books as a distribution or as compensation—and Defendants' argument thus fails.

Finally, the Court notes that on April 30, 2015—**the day *after* the motion hearing on this matter**—Defendants produced and filed with the Court over 16,600 pages of accounting records for Flamingo West Ltd.  (Docket No. 124.)  The Court appreciates Defendants' ultimate decision to comply with their discovery obligations, but does not find this untimely disclosure to have any bearing on the instant matter.

For the foregoing reasons, none of Defendants' arguments are availing.  The Court will impose sanctions on Defendants, as follows.

### Order

It is hereby ORDERED that:

9

1. Plaintiff's Motion to Renew Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) (Docket No. 89) is GRANTED.

2. Defendants shall pay Plaintiff's attorneys' reasonable and necessary fees as to Plaintiff's renewed motion for sanctions (Docket No. 89), including costs and expert-witness fees.  The parties shall forthwith meet and confer to see if they can agree upon the attorneys' fees, costs, and expert-witness fees.  If the parties can agree, then they shall file their stipulation with the Court on or before May 18, 2015.  If they parties cannot agree, then Plaintiff shall file its itemized affidavit for attorneys' fees, costs, and expert-witness fees with the Court on or before May 18, 2015, with briefing to follow pursuant to D.C.Colo.LCivR 7.1(d).

3. The following factual allegations from Plaintiff's Second Amended Complaint (Docket No. 65) are hereby ENTERED as findings of fact, taken to be established for all purposes in this litigation:

   a. Paragraph 55, subparagraphs a. through g. (but not the flush language of Paragraph 55, preceding subparagraph a., which states a legal conclusion rather than factual allegations);

   b. Paragraph 62, subparagraphs a. through h. (but not the flush language of Paragraph 62, preceding subparagraph a., which states a legal conclusion rather than factual allegations); and

   c. Paragraphs 74, 79, 80, 81, 82, and 83.

Dated:       May 4, 2015                    _/s/ Michael J. Watanabe_____
             Denver, Colorado              Michael J. Watanabe
                                           United States Magistrate Judge